**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mayra Serna o/b/o Minor Child, R.S.S., | No. CV-13-02416-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Mayra Serna, on behalf of her minor child, seeks judicial review and reversal of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Supplemental Security Income benefits. For the reasons discussed below, the Court will vacate the decision of the Commissioner and remand this action for further proceedings.[1]

**I.   Background**

On December 10, 2010, Plaintiff protectively filed an application for Supplemental Security Income benefits under Title XVI of the Social Security Act on behalf of her child ("R.S.S."). A.R. 27. R.S.S. was born on January 25, 2001. A.R. 30. He was a school-age child when the application was filed and is currently a school-age child. *Id.* In her application, Plaintiff alleges disability beginning August 31, 2010. A.R.

---

[1] This matter is suitable for resolution based on the briefs. Accordingly, the Court denies Plaintiff's request for oral argument. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

27. Her application was denied initially on June 6, 2011, and upon reconsideration on November 3, 2011. *Id.* On June 11, 2012, Plaintiff and R.S.S. appeared and testified at a hearing before the ALJ. *Id.*

On July 26, 2012, the ALJ issued a decision that R.S.S. was not disabled within the meaning of the Social Security Act. A.R. 24. Plaintiff appealed this decision to the Appeals Council, which denied review on September 27, 2013, making the ALJ's decision final. A.R. 1.

## II. R.S.S.'s Medical History

On February 17, 2010, R.S.S. underwent a psychiatric evaluation by Tom Reichenbacher, M.D. A.R. 376-78. Plaintiff reported that R.S.S. was aggressive toward himself, her family, and her peers. A.R. 376. Plaintiff also reported that R.S.S. had been hyperactive since birth and was unable to sit for television or meals, climbed on things, and showed aggression towards her if she tried to show affection toward his father. *Id.* Plaintiff told Dr. Reichenbacher that R.S.S. was unpredictable, inattentive, and uncooperative at school. Plaintiff also told the physician that R.S.S. had imaginary friends and heard voices. *Id.* Dr. Reichenbacher diagnosed R.S.S. with attention deficit hyperactivity disorder ("ADHD"), recommended therapy for "his other behavioral problems, particularly anger," and reported being "very concerned with his very poor sleep." *Id.* At the same time, Dr. Reichenbacher reported that R.S.S. seems "to do fairly well" socially. *Id.* at 378. The physician assessed R.S.S. with a Global Assessment of Functioning ("GAF") score of 50.[2]

---

[2] GAF scores assess overall psychological functioning on a scale of 1-100. *Diagnostic and Statistical Manual of Mental Disorders* 32 (Michael B. First ed., 4th ed. text rev., Am. Psychiatric Ass'n. 2000). A score in the high range (91-100) represents superior functioning while a score in the low range (1-10) represents serious impairment. *Id.* A GAF score of 51-60 corresponds to moderate symptoms. A.R. 394. A score of 41-50 corresponds to major symptoms in several areas. *Id.* GAF scores have been excluded from DSM-V (2013). *See generally* Liza H. Gold, *DSM-5 and the Assessment of Functioning: The World Health Organization Disability Assessment Schedule 2.0 (WHODAS 2.0)* 42:2 J. Am. Acad. Psychiatric L. (2014) (discussing the exclusion of the GAF system due to concerns of validity, reliability, sensitivity, and lack of conceptual clarity).

In August 2010, R.S.S. was evaluated by several mental health providers. R.S.S. underwent a psychological assessment by Len Sarff, Ph.D. A.R. 30. Dr. Sarff diagnosed R.S.S. with ADHD, receptive-expressive language disorder, and Asperger's disorder. *Id*. R.S.S. obtained an IQ score of 78, placing him in the "Well Below Average" range. A.R. 421. Dr. Sarff recommended a reading tutor and therapist to help R.S.S. with "low self-esteem and the frustrations he is feeling." A.R. 30, 427. Also in August 2010, R.S.S. was evaluated by Alejandra Sanchez, a behavioral health technician who diagnosed R.S.S. with schizoaffective disorder and ADHD. A.R. 31. She assigned R.S.S. a GAF score of 55. *Id.* In that same month, R.S.S. was evaluated by Dr. Michael Stumpf. A.R. 31. He diagnosed R.S.S. with pervasive development disorder and ADHD. *Id.* Dr. Stumpf prescribed several psychotropic medications. *Id.*

R.S.S. began to see treating physician Dr. Paul Guzman in October 2010. A.R. 543. Dr. Guzman diagnosed pervasive developmental disorder NOS (not otherwise specified) and ADHD. Dr. Guzman evaluated R.S.S. monthly, prescribed several psychotropic medications, and switched medications when R.S.S. built tolerance. Dr. Guzman assigned R.S.S. a GAF score of 55. A.R. 763-65.

In April 2011, R.S.S.'s fourth grade teacher, Ms. Sarah Sanford submitted a teacher's questionnaire. A.R. 31, 269. Ms. Sanford opined that R.S.S. was trying hard, but he needed to be in a small group setting and sometimes needed to be redirected. A.R. 31, 270. Ms. Sanford opined that R.S.S. struggled at reading and comprehending written material. A.R. 270.

In May 2011, speech and language pathologist Joni Long reported that R.S.S. had moderately delayed listening comprehension and oral expression. A.R. 31. Ms. Long opined that R.S.S. had average articulation and speech fluency. *Id*.

In May 2011, R.S.S. was also evaluated by consultative psychological examiner Dr. Amando Bencomo. A.R. 31, 616. Dr. Bencomo concluded that R.S.S. appeared to have ADHD, a mood disorder, weak short-term auditory memory, and delayed expressive

vocabulary. *Id*. Dr. Bencomo opined that R.S.S. had a low-average range of intelligence. *Id*.

In June 2011, state agency employees Tasneem Khan, Ed.D. and Debbie L. Wise, SLP, reviewed the evidence and concluded that R.S.S.'s impairments did not functionally equal the listing criteria. A.R. 92. The reviewers opined that R.S.S. suffered no limitations or less than marked limitations in all domains. A.R. 89-92.

In November 2011, Jaine Foster-Valdez, Ph.D. and Tasneem Khan, Ed.D. reviewed the record and opined that R.S.S.'s impairments did not functionally equal the listing criteria. A.R. 35, 110. These reviewers found that R.S.S. suffered no limitations or less than marked limitations in all domains, except for a marked limitation in interacting and relating with others. A.R. 108-10. A reconsideration denial was issued on November 2011. A.R. 127-30.

In September 2011, treating physician Dr. Guzman filled out a "Medical Source Statement About a Child." A.R. 32, 774. He opined that R.S.S. had marked limitation in acquiring and using information, attending to and completing tasks, interacting and relating to others, and health and physical well-being. *Id*. He found a less than marked limitation in R.S.S.'s ability to care for himself, but no limitation in R.S.S.'s ability to manipulate objects and move about. *Id*.

From October 2011 to June 2012, Dr. Guzman continued to evaluate R.S.S. A.R. 794-827. Dr. Guzman made several assessments of R.S.S.'s condition. In October 2011, Dr. Guzman found that R.S.S. was unstable. A.R. 826. In November 2011, he found that R.S.S.'s condition had worsened and R.S.S. had become increasingly physical and verbally aggressive. A.R. 822. In February 2012, Dr. Guzman's progress notes describe R.S.S. as dysphoric, guarded, and delusional. A.R. 810. Dr. Guzman found that R.S.S. is "given to bouts of severe agitation characterized by striking himself and striking others." *Id*. In March 2012, Dr. Guzman found that R.S.S. "does not appear to be responding to meds." A.R. 805.

### III. Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination when the ALJ's determinations are not supported by substantial evidence or based on legal error. *Orn v. Astrue*, 495 F. 3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

### IV. The Evaluation of Childhood Disability

"An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also Howard* ex rel. *Wolff v. Barnhart*, 341 F.3d 1006, 1013 (9th Cir. 2003).

#### A. The Three-Step Evaluation Process

In determining eligibility for SSI based on a childhood disability, the Commissioner follows a three-step evaluation process. 20 C.F.R. § 416.924(a). At step one, the Commissioner considers whether the child has engaged in substantial gainful activity; if so, the child is not disabled and the claim must be denied. § 416.924(b). If the child is not engaged in substantial gainful activity, the second step requires the Commissioner to consider whether he or she has a "severe" impairment or combination

of impairments; if not, a finding of not disabled is made and the claim must be denied. § 416.924(c). If the child has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment meets, medically equals, or functionally equals an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R., Part 404, Subpart P, Appendix 1. § 416.924(d). If so, and the impairment also meets the duration requirement, the child is disabled and benefits are awarded. *Id*.

An impairment "functionally equals" a listed impairment if it results in marked limitations in at least two of six functional domains or an extreme limitation in at least one domain. § 416.926a(a). The six functional domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting with and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. § 416.926a(b)(1)(i)-(vi). A marked limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." § 416.926a(e)(2). An extreme limitation "interferes very seriously" with those abilities. § 416.926a(e)(3). In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe. § 416.926a(a). The ALJ must also consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain. § 416.926a(c)

### B. The ALJ's Application of the Three-Step Process

At step one, the ALJ found that R.S.S. had not engaged in substantial gainful activity since the application date. A.R. 30. At step two, the ALJ found that R.S.S. had the following severe impairments: ADHD, mood disorder, anxiety disorder, and communication impairment. *Id*. At step three, the ALJ found that R.S.S. did not have an impairment or combination of impairments that met or medically or functionally equaled one of the listings. A.R. 33. Specifically, the ALJ found that Plaintiff had a marked limitation in only one of the six functional domains: interacting and relating with others.

A.R. 38. He found that Plaintiff had a less than marked limitation in three functional domains: acquiring and using information, attending and completing tasks, and caring for himself. A.R. 35-41. He also found that Plaintiff had no limitations in two functional areas: moving about and manipulating objects, and health and physical well-being. *Id*. Accordingly, the ALJ determined that R.S.S. was not disabled since December 10, 2010, the date the application was filed. A.R. 42.

## V. Analysis

Plaintiff argues that the ALJ's decision was defective for two reasons: (1) the ALJ erroneously weighed medical source evidence; and (2) the ALJ failed to consult a qualified medical expert to obtain a case evaluation based on the record in its entirety. The Court will address each argument below.

### A. Weighing of Medical Source Evidence

#### 1. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Brown*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043). However, the "opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of

either an examining physician or a treating physician." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1202 (9th Cir. 2007).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

The Commissioner is responsible for determining whether a claimant met the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Dr. Paul Guzman's Opinions

In assessing Plaintiff's six functional domains, the ALJ declined to give controlling weight to Dr. Paul Guzman's opinions provided in a Medical Source Statement. A.R. 35. Instead, the ALJ gave greater weight to other non-examining source opinions. *Id*. Plaintiff argues that the ALJ erred in weighing the medical testimony by: (1) not considering all of the medical evidence in the record; and (2) not offering sufficient reasons for rejecting Dr. Guzman's opinions. Doc. 21 at 10, 12, 15.

On September 19, 2011, Dr. Guzman filled out a "Medical Source Statement about a Child" A.R. 774. He opined that R.S.S. had marked limitation in acquiring and using information, attending to and completing tasks, interacting and relating to others, and health and physical well-being. *Id*. He found a less than marked limitation in R.S.S.'s ability to care for himself, and no limitation in R.S.S.'s ability to manipulate objects and move about. *Id*.

The ALJ declined to give controlling weight to Dr. Guzman's assessments because: (1) the ALJ found that marked limitations in the first three child domains were inconsistent with Dr. Guzman's treatment notes, which "consistently report[ed] a GAF of

55," representing only moderate limitations; and (2) the ALJ found that Dr. Guzman's opinions were not consistent with R.S.S.'s Individualized Educational Program ("IEP") reports, teacher reports, and MIKID[3] reports, which indicated only "limited behavioral attention problems."  A.R. 35.

The Court finds that the ALJ committed legal error in weighing Dr. Guzman's medical opinions.  The ALJ entirely disregarded Dr. Guzman's opinions, instead affording substantial weight to non-examining sources without providing sufficient reasons for doing so.  The ALJ did not adequately consider the entire record as a whole in weighing the medical opinions of Dr. Guzman. And, the ALJ failed to analyze the factors identified in 20 C.F.R. § 404.1527(c)(2) to determine if Dr. Guzman's opinions were is entitled to some deference.

First, the ALJ did not offer specific and legitimate reasons supported by substantial evidence for not giving Dr. Guzman's opinions controlling weight based on his treatment notes, instead providing only a short statement that Dr. Guzman's opinions regarding marked limitations in the first three child domains were "inconsistent with treatment records, which consistently report a GAF of 55, representing only moderate limitations." A.R. 35. This reason is insufficient.  As the Ninth Circuit Court in *Garrison* advised:

> Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement. We note, however, that GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects.

759 F.3d at 1003 n.4.  Accordingly, the Court finds these scores, alone, are an insufficient basis upon which to discount Dr. Guzman's opinions, particularly in light of Dr. Guzman's more recent treatment notes.  AR 794-827.

Likewise, the Court finds that the ALJ's general reference to an IEP, teacher

---

[3] MIKID (Mentally Ill Kids in Distress) is an outpatient clinic in Arizona specializing in children's mental health services.

- 9 -

reports, and reports from MIKID, which the ALJ found indicate only limited behavioral and attention problems and progress with Special Education services, is an insufficient reason for failing to give Dr. Guzman controlling weight in light of more recent treatment notes and a March behavioral health plan that indicates R.S.S. "continued to have anger outbursts, had become more violent and had been more aggressive towards his mother and others." AR 41. The Court in *Garrison* cautioned that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." The ALJ fails in his analysis to fully address and take into account more recent evidence in the record.

Second, the ALJ erred in affording substantial weight to the November 2011 medical assessments of Jaine Foster-Valdez, Ph.D. and Tasneem Khan, Ed.D., both non-examining sources. A.R. 35, 110. An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. *Lewis*, 236 F.3d at 512 (stating that "a boilerplate finding is insufficient to support a conclusion that a claimant's 'impairment does not do so"). Further, an ALJ commits an "egregious and important error" in relying on a "very early" consultant report whose assessments differ from the assessments of the treating physicians. *Garrison*, 759 F.3d at 1013. The ALJ acknowledged that R.S.S. had "become more violent and had been more aggressive towards his mother and others" after the reconsideration assessment in November 2011. A.R. 33. However, the consultative reports did not consider all of the relevant evidence because they were prepared more than eight months prior to the last psychiatrist visit noted in the record. Thus, the ALJ committed legal error in weighing the medical opinions of state agency reviewing physicians.

Additionally, even if the ALJ appropriately determined that Dr. Guzman's opinions were not entitled to controlling weight, the ALJ committed legal error by not analyzing the factors identified in 20 C.F.R. § 404.1527(c)(2). Social Security Rules

1 require that a treating source's opinion on an issue of a claimant's impairment be given
2 controlling weight if it is well-supported by medically acceptable clinical and laboratory
3 diagnostic techniques and is not inconsistent with the other substantial evidence on the
4 record.  20 C.F.R. § 404.1527(c)(2).  However, even if an ALJ does not give a treating
5 source's opinion controlling weight, the ALJ must still determine whether the treating
6 physician's opinions are entitled to some deference by analyzing factors such as the
7 length of the treatment relationship, frequency of examination, nature and extent of the
8 treatment relationship, relevant evidence supporting the opinion, consistency with the
9 record as a whole, and the source's specialization. *Id.*  The ALJ's decision states that the
10 ALJ "declines to give controlling weight to psychiatric Paul Guzman's opinions" but the
11 decision itself afforded little, if any, weight to Dr. Guzman's assessments with no
12 evaluation of the relevant factors, including the length of Dr. Guzman's treatment
13 relationship with R.S.S. and the fact that Dr. Guzman is a psychiatrist, a specialty for the
14 purposes of understanding R.S.S's functional limitations.

15 The Commissioner argues that the ALJ noted the opinions of record of both
16 consultative examiners and state agency medical providers. Doc. 26 at 15. However, as
17 detailed above, the opinions of the non-examining sources did not adequately consider
18 new evidence of worsening symptoms found in the medical record. The ALJ failed to
19 address this fact in his decision.  Further, although the ALJ mentions Dr. Bencomo's
20 psychological consultative examination, the ALJ did not specifically discount Dr.
21 Guzman's opinion based on Dr. Bencomo's findings.

22 Based on the above, the Court finds that the ALJ failed to give specific and
23 legitimate reasons supported by substantial evidence for rejecting Dr. Guzman's opinions
24 and, therefore, committed reversible error.

25 **B. Medical Expert Evaluation of the Case**

26 Plaintiff contends that the ALJ erred by ignoring counsel's request that a medical
27 expert evaluate the case based on the entire record. Doc. 21 at 18.  Section 1382c(a)(3)(I)
28 of the Social Security Act provides:

> In making any determination under this title . . . with respect to the disability of an individual who has not attained the age of 18 years . . . , the Commissioner of Social Security shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual (as determined by the Commissioner of Social Security) evaluates the case of such individual.

42 U.S.C. § 1382c(a)(3)(I). In *Howard ex rel. Wolff*, the Ninth Circuit Court interpreted § 1382c, finding that an ALJ could not rely on physicians' individual evaluations and "was required to make a reasonable effort to obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply constructing his own case evaluation from the evidence in the record." 341 F.3d at 1014.

The court in *Howard* found that the ALJ failed to achieve "substantial compliance with the statute" even if the record was "replete with records from expert physicians." *Id*. The court reasoned that there is a distinction "between having an expert evaluate a claimant with respect to that expert's particular specialty, and having an expert evaluate a claimant's case in its entirety, considering all of the medical records" to determine whether a claimant is disabled within the meaning of the Social Security Act. *Id*. at n.2. The court noted that compliance with the statute could also be achieved by evaluations from state agency doctors, if they were appropriate specialists, and their specialties could be determined from the case record. *Id.* at 1014.[4]

In this case, the ALJ erred by failing to obtain a complete case evaluation from a qualified specialist based on the record in its entirety. The ALJ's decision did not address the requirements of *Howard* or Acquiescence Ruling 04-1(9), or which expert the ALJ relied on to satisfy the requirement of a case evaluation. Further, the ALJ relied on the

---

[4] In response to *Howard,* the SSA issued Social Security Acquiescence Ruling 04-1(9), 69 Fed. Reg. 22578 (Apr. 26, 2004). The ruling states that under *Howard,* an ALJ may rely on a "case evaluation made by a State agency medical or psychological consultant that is already on the record" or the "testimony of a medical expert." 69 Fed. Reg. at 22580. If the "ALJ relies on the case evaluation by a State agency medical or psychological consultant, the record must include evidence of the [consultant's] qualifications," and the ALJ "must ensure that the decision explains how the consultant's evaluation was considered." *Id*.

- 12 -

1    opinions of numerous individual specialists, but did not rely on any specialist who had
2    the opportunity to evaluate the case as a whole. The Commissioner argues that the ALJ
3    substantially complied with *Howard* because the ALJ's decision explicitly considered the
4    opinions of several practitioners with specified credentials. Doc. 26 at 19-20. While it is
5    true that the ALJ considered several medical opinions, the ALJ does not clearly describe
6    how these opinions were considered, which falls short of the requirements in
7    Acquiescence Ruling 04-1(9). *See* Acquiescence Ruling 04-1(9), 69 Fed. Reg. 22, 580
8    (stating that "the ALJ or AAJ must ensure that the decision explains how the State
9    agency medical or psychological consultant's evaluation was considered"). The ALJ's
10   discussion very briefly summarizes the findings of the consultants but does not describe
11   how the opinions were actually considered.[5] *See Willmett v. Astrue*, No. 2:10-cv-01201,
12   2011 WL 3816284, at * 5 (Aug. 25, 2011) ("the ALJ's decision does not describe in any
13   concrete way how the reports of the state agency physicians were considered, which
14   again violates Acquiescence Ruling 04–1(9).").

15   Even assuming that the medical evaluations substantially complied with
16   §1382c(a)(3)(I) when authored, they did not meet the requirements of *Howard* and
17   Acquiescence Ruling 04-1(9) at the time of the ALJ's decision. As Plaintiff correctly
18   notes, the evaluations were more than eight months old when the ALJ made a decision
19   and, during those eight months, a significant amount of relevant evidence was added to
20   the record. For example, the record indicated that R.S.S.'s condition "worsened" and he
21   became "unstable" after November 2011. A.R. 822. In February 2012, Dr. Guzman
22   found that R.S.S. was "far from stable, given to bouts of severe agitation . . . striking
23   himself and striking others." A.R. 810. In March 2012, Dr. Guzman found that R.S.S.
24   "does not appear to be responding to the meds." In June 2012, the record indicated that

---

[5] The ALJ's decision merely states that the "State agency psychological and physical medicine consultants concluded that the claimant had no impairment or combination of impairments that functionally equaled the childhood listings. They reviewed the record in October and November 2011. (Exhibit 4A.) These assessments are given substantial weight as being consistent with the evidence available at the hearing level." A.R. 35.

1  R.S.S. was "depressed and suffering from delusions." A.R. 796. The Commissioner
2  argues that the ALJ has achieved substantial compliance with *Howard* because a "second
3  team of state agency medical professionals with specialties relevant to R.S.S.'s alleged
4  impairment analyzed the full record." Doc. 26 at 19. However, the Commissioner's
5  argument ignores that the state agency medical professionals could not have analyzed the
6  full record in November 2011 because at the time the record was not yet fully developed.

7  The record indicates that the ALJ's decision relied on several sources of evidence
8  that were not available at the time of the state evaluations. A.R. 36-41. For example, the
9  ALJ cited to Dr. Guzman's notes from May 2012. A.R. 39. The ALJ also cited to a
10 behavioral health plan in school from March 2012. A.R. 41. The ALJ's decision
11 specifically mentioned that in May 2012, the "claimant continued to have anger
12 outbursts, had become more violent and had been more aggressive towards his mother
13 and others." A.R. 33. These facts were unavailable to the state agency reviewers in
14 November 2011. Accordingly, the medical evaluations that took place in June 2011 and
15 November 2011 were not "based on the record on its entirety." Thus, the ALJ's decision
16 does not substantially comply with the statutory mandate as interpreted by *Howard*.
17 *Godwin v. Comm'r Soc. Sec.*, No. CV 09–482–PHX–MHM, 2010 WL 1337745, at *4
18 (March 31, 2010) ("Assuming, without deciding, that the four evaluations substantially
19 complied with § 1382c(a)(3)(I) when authored, the Court notes that they were more than
20 three-years old when the ALJ made her decision and, during those three years, a
21 significant amount of evidence was added to the record.").

22 Accordingly, the Court finds that the ALJ erred by not making a reasonable effort
23 to obtain a case evaluation on the record in its entirety.

24 **VI.    Remand for further proceedings is appropriate here.**

25 Having determined that the ALJ erred, the Court must vacate the Commissioner's
26 decision. The remaining issue for the Court is whether to remand this matter for an
27 award of benefits or for further proceedings. Such a determination is within the Court's
28 discretion. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted); *see also Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1101 (9th Cir. 2014) (noting that a remand for further administrative proceedings is generally useful where the record has not been fully developed, there are outstanding conflicts and ambiguities to be resolved, or the presentation of further evidence may "prove enlightening."). The Court applies the credit-as-true rule to determine that a claimant is disabled and entitled to an award of benefits only if there are no "outstanding issues [in the record] that must be resolved" and "it is clear from the record that the ALJ would be required to find the claimant disabled were [the improperly rejected] evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). However, a "claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r, Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Here, the Court finds that remand for further proceedings and a new decision is appropriate as there are evidentiary conflicts and outstanding issues that remain for the ALJ to address. Remand for further proceedings will allow the ALJ an opportunity to seek testimony based upon a medical expert's review of the entire record. And, because a finding of "marked" limitation in any two domains would direct a finding of disability, remand for further proceedings is appropriate to allow an ALJ to properly weigh the medical opinion evidence based on the proper legal standards.

**VII.    Conclusion**

The Court has considered the record as a whole, weighing both the evidence that supports and which detracts from the ALJ's conclusion. The Court concludes that the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Guzman. The Court further concludes that the ALJ failed to comply with the requirements of 42 U.S.C. § 1382c(a)(3)(I) as interpreted in *Howard* and as described by the Commissioner in AR

04-1(9). As outstanding issues remain, the Court will remand this case to the Commissioner for further proceedings consistent with this Order.

Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **VACATED** and this case is **REMANDED** for further proceedings consistent with this Order. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 31st day of March, 2015.

Honorable John Z. Boyle
United States Magistrate Judge